UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

ANDREW MOSSBERG,

    Plaintiff,

v.

CITY OF MIAMI BEACH
and PHILLIPE ARCHER,

    Defendants.
_____/

## COMPLAINT

### INTRODUCTION

1.	This is a civil rights action on behalf of Andrew Mossberg whose rights under the First and Fourth Amendments to the United States Constitution were violated when he called 911 to report that Defendant Phillipe Archer, a Miami Beach police officer, was physically abusing a young woman on West Avenue in Miami Beach.  Upon realizing that Mossberg had called the police to report him, Defendant Archer retaliated against Mossberg by falsely arresting him and by using excessive and unnecessary force.

2.	This action for money damages is brought pursuant to 42 U.S.C. Section 1983, the First and Fourth Amendments to the United States Constitution, and under the common law of the State of Florida against the City of Miami Beach and Defendant Archer.

### JURISDICTION AND VENUE

3.	This action arises under federal law and the First and Fourth Amendments to the United States Constitution.

1

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343 and on the supplemental jurisdiction of this court to entertain claims arising under state law pursuant to 28 U.S.C. Section 1367.

5. Venue is proper in this district because it is where the events complained of occurred.

6. All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Chapter 768.

## PARTIES

7. Plaintiff Andrew Mossberg ("Mossberg") is a successful businessman and a single parent. At all times relevant to this complaint, Mossberg was a citizen of the United States and a resident of Miami Beach, Florida.

8. Defendant City of Miami Beach ("City") is a political subdivision of the State of Florida.

9. Defendant police officer Phillipe Archer ("Archer") was at all times relevant to this complaint duly appointed and acting as a police officer of the City of Miami Beach Police Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Miami Beach Police Department.

10. At all material times, Defendants were engaged in conduct that was the proximate cause of the violations of Plaintiff's federally protected rights and the damages suffered therefrom.

## STATEMENT OF FACTS

**A.     June 26, 2013:  The Incident on West Avenue**

11. On June 26, 2013, at approximately 6:30 p.m., Plaintiff Andrew Mossberg, age

2

fifty, was walking his dog, Snoopy, northbound in the 700 block of West Avenue in Miami Beach, Florida.

12. Mossberg was accompanied on the walk by his ten year old son, Taiga.

13. Mossberg lived in a condominium just a block away and had lived on Miami Beach for over ten years.

14. Mossberg is 5'2" tall and weighs 120 pounds.

15. Mossberg was wearing khaki pants, a tee shirt, a cap, and flip flops.

16. While walking, Mossberg saw a large male, dressed in a red shirt, blue jeans and sneakers, yelling at a small, thin woman.

17. The large male was Defendant Miami Beach Police Officer Phillipe Archer, who was working as an undercover officer.

18. The young woman appeared to Mossberg to be in distress.

19. Mossberg and his son walked past Archer and the young woman.

20. After passing Archer and the young woman, Mossberg looked back and saw Archer going through the young woman's purse and pulling items out of the purse.

21. Mossberg was not clear what was happening and believed that he may have been witnessing either a domestic dispute or a robbery.

22. Mossberg called 911.

23. While on the phone with the 911 operator, Mossberg saw Archer hit the young woman in the face.

24. The force of the blow knocked the young woman down and when she tried to get back up, Archer kicked her legs from under her and she again fell down.

25. Mossberg described to the 911 operator what he had just seen and pleaded with the

operator to send someone right away.

26. Mossberg did not physically intervene and did not attempt to physically stop Archer from what he was doing.

27. Instead, Mossberg yelled at Archer to stop and told him that he just had called the police and that the police were on the way.

28. In response, Archer immediately charged at Mossberg and kicked Mossberg in the head.

29. Mossberg was instantly knocked to the ground.

30. While Mossberg was on the ground, Archer punched him in the head and body numerous times.

31. Mossberg did not physically resist or fight Archer.

32. Archer handcuffed Mossberg, who was bleeding from the face and head, and placed him into custody.

33. Archer arrested Mossberg and charged him with battery on a law enforcement officer, resisting an officer with violence, obstruction of justice and disorderly conduct.

34. Mossberg was booked into the Miami-Dade County Jail.

35. Mossberg did not violently attack Archer and did not unlawfully obstruct or interfere in the performance of Archer's lawful duties as a police officer.

36. Upon being properly served and notified by the State Attorney to appear, Defendant Archer failed to attend a pre-filing conference at the State Attorney's Office and thus failed to provide sworn testimony to the prosecuting authorities as to the allegations of alleged criminal conduct that he made against Plaintiff Mossberg.

37. On August 15, 2013, the State Attorney of Miami Dade County dismissed all

charges against Mossberg.

38. As a direct and proximate cause of the acts of the defendants, Mossberg suffered damages which include physical injury, physical pain and suffering, mental anguish and distress, loss of liberty, humiliation, embarrassment, damage to reputation, loss of income, and the violation of his constitutional rights.

**B. Defendant Archer's History of Misconduct and Civil Rights Violations**

39. During the course of the Defendant City's employment of Defendant Archer, the City became aware, or should have become aware, of information that Defendant Archer was unfit to serve in the capacity of a police officer, that he posed a danger to the public, and that he had repeatedly violated the civil rights of those he was sworn to serve.

40. Prior to June 26, 2013, the City was on notice of Defendant Archer's misconduct and his proclivities to violate the civil rights of others based on the following:

a) *Duquesne v. Miami Beach, Phillipe Archer, et al.*, 12-CIV-20575 (S.D. Fla. 2012). Archer was sued on February 13, 2012, in federal court for false arrest, battery/excessive force and malicious prosecution pursuant to 42 U.S. C. § 1983 and state common law. In *Duquesne,* Archer accosted the plaintiff while he was buying a newspaper. Archer, in plain clothes, did not present himself as a police officer. Plaintiff walked away and Archer followed him in an unmarked car. Concerned that he was being followed by a criminal, the plaintiff approached a Miami Beach police car for help. That officer detained plaintiff. Archer and a third Miami Beach police officer caught up to plaintiff. The plaintiff was then arrested and taken to the police station where he was beaten by Archer and another officer. Archer swore to false statements which led to a criminal prosecution against the plaintiff. The plaintiff was incarcerated for nine months awaiting trial. On the day of the plaintiff's trial in criminal court, Archer failed

to appear to testify and the charges were dismissed. On October 30, 2012, a settlement of the federal lawsuit against Archer was reached wherein the City paid money damages to resolve the claims against Archer.

        b)     *Lawson v. Miami Beach, Phillipe Archer, et al.*, 12-CV-22244 (S.D. Fla. 2012). On June 14, 2012, Archer was sued in federal court for civil rights violations. In *Lawson*, Archer and two other Miami Beach officers confronted the plaintiff, a lawyer, while he was leaving a nightclub. Archer and the other officers detained plaintiff based on a complaint by the club's manager. When the plaintiff identified himself as an attorney and asked for the legal basis for the officers' actions, Archer and the officers placed him under arrest and handcuffed him. A criminal case was initiated against the plaintiff and the criminal court judge, upon reviewing the arrest affidavit, found there was no probable cause for the arrest and the charges were dismissed. The plaintiff brought suit against Archer alleging retaliation in violation of the First Amendment and false arrest in violation of the Fourth Amendment. On October 30, 2012, a settlement of the federal lawsuit against Archer was reached wherein the City paid money damages to resolve the claims against Archer.

        c)     *Moulin and Moulin v. Phillipe Archer, et al.*, 12-CV-23390 (S.D. Fla. 2012). On September 17, 2012, Archer was sued for civil rights violation in state court and the case was removed to federal court. The plaintiffs, father and son, were on vacation on Miami Beach. As the father was paying for parking on South Beach at a parking machine, Archer, who was acting undercover, and another officer in plain clothes detained his two sons without reasonable suspicion while the sons were waiting for their father at a park bench a short distance away. When the father walked back and saw his sons surrounded by Archer and now three other plain clothes officers, he demanded to know what was going on. Archer and the other officers

physically attacked the father and struck him repeatedly in the face. Archer and the other officers also used excessive force by choking and striking the son. Father and son sued Archer and the other officers for false arrest and excessive force in violation of the Fourth Amendment. In April 2013, a settlement of the federal lawsuit against Archer was reached wherein the City paid money damages to resolve the claims against Archer.

d) *Azor v. City of Miami Beach, Archer, et al.*, 13-18052 CA 08. On May 21, 2013, Archer was sued in Miami Dade Circuit Court for civil rights violations arising from a police involved shooting. Archer was one of a number of police officers who fired more than 115 rounds into a tourist's car during Memorial Day weekend in 2011, killing the driver and wounding at least five innocent bystanders. Azor, the mother of the deceased, brought suit on behalf of her son's estate. The case was removed and is presently pending in federal court. One of the bystanders, Carlson St. Louis, also sued Archer after a bullet shattered his femur and pelvis. That case has been consolidated with Azor and is also currently pending.

41. Thus, in the one year period before June 26, 2013 -- the day Archer physically attacked and falsely arrested Mossberg -- Defendant Archer was sued in four (4) separate cases for civil rights violations involving excessive force.

42. The City of Miami Beach paid thousands of dollars in settlements and attorney fees in the *Duquesne*, *Lawson* and *Moulin* cases.

43. The *Duquesne*, *Lawson, Moulin* and *Azor* cases, all filed in 2012 and 2013, were not Defendant Archer's first experience as a defendant in a civil rights lawsuit.

44. In *Porto v. Vazquez, Archer, Miami Beach, et al.*, 99-CIV-2484, Archer was sued for civil rights violations including false arrest, malicious prosecution and excessive force in federal court. In *Porto*, the plaintiff and his wife were in a parking lot having an argument. There

was no evidence that the argument involved violence or the threat of violence. The wife was seated in the driver's side of the car and her husband, the plaintiff, was standing outside the car. Archer, who was dressed in plain clothes, along with other Miami Beach officers, grabbed plaintiff from behind and beat him. Archer swore to false statements in an arrest affidavit, alleging that plaintiff had used violence against the police and had resisted the officers with violence. The criminal charges were subsequently dismissed by the State Attorney. A settlement of the federal lawsuit against Archer was reached wherein the City paid money damages to resolve the claims against Archer.

45    Prior to June 26, 2013, Defendant Archer had been the subject of seven citizen complaints for misconduct involving excessive force and false arrest.

46.    On three separate occasions prior to June 26, 2013, Defendant Archer was administratively cited by the police department for ignoring and failing to respond to subpoenas to testify in court proceedings where he was either the arresting officer or a material witness, as he did in this case and in the *Duquesne* case.

47.    In furtherance of its responsibility to supervise Archer and in response to Defendant Archer's conduct – in particular, his being sued four (4) times for civil rights violations involving excessive force in the one year period prior to his attack of Mossberg – the City did nothing.

48.    The City did not fire, reprimand, discipline, counsel, re-assign or re-train Defendant Archer prior to June 26, 2013.

## COUNT I

(State Tort of False Arrest against Defendant City of Miami Beach)

49.    Plaintiff re-alleges paragraphs one through thirty-eight and incorporates them by

reference herein.

50. Defendant City of Miami Beach is responsible for the conduct of its police Officers who are acting in the course and scope of their employment.

51. On June 26, 2013, Plaintiff was arrested by Defendant Archer, a Miami Beach police officer who was acting in the course and scope of his duties as a police officer.

52. Such seizure physically deprived Mossberg of his freedom and liberty.

53. The restraint and arrest of Mossberg was unlawful and unreasonable in that it was not based upon lawfully issued process of Court.

54. As a result of the actions of Defendant Archer, for which Defendant the City of Miami Beach is responsible, Plaintiff Mossberg suffered damages.

55. Pursuant to Fla. Stat. § 768.28(9)(a), the City is not "liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wilful and wanton disregard of human rights, safety or property."

56. As permitted by Fed. R. Civ. P. 8(d), in the alternative to the contrary allegations set forth in this Complaint, Plaintiff Mossberg alleges that Defendant Archer committed the tort of false arrest, but not in bad faith or with malicious purpose, nor in a manner exhibiting wilful and wanton disregard of human rights, safety, or property.

57. Vicarious liability should be imposed on the City of Miami Beach for the Defendant Archer's acts of false arrest to the extent allowed by law.

58. Pursuant to §768.28, Florida Statutes, Plaintiff notified Defendant City of Miami Beach of this claim prior to filing this action and said claim was not resolved.

**COUNT II**

(State Tort of Battery against Defendant City of Miami Beach)

59. Plaintiff re-allege paragraphs one through thirty-eight and incorporates them by reference herein.

60. Defendant City of Miami Beach is responsible for the conduct of its police officers who are acting in the course and scope of their employment.

61. Defendant Archer, while acting in the course and scope of his employment as a police officer, did unreasonably batter Plaintiff Mossberg.

62. As a result of the actions of Defendant Archer, for which Defendant the City of Miami Beach is responsible, Plaintiff Mossberg suffered damages.

63. Pursuant to Fla. Stat. § 768.28(9)(a), the City is not "liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wilful and wanton disregard of human rights, safety or property."

64. As permitted by Fed. R. Civ. P. 8(d), in the alternative to the contrary allegations set forth in this Complaint, Plaintiff Mossberg alleges that Defendant Archer committed the tort of battery, but not in bad faith or with malicious purpose, nor in a manner exhibiting wilful and wanton disregard of human rights, safety, or property.

65. Vicarious liability should be imposed on the City of Miami Beach for the Defendant Archer's acts of battery to the extent allowed by law.

66. Pursuant to §768.28, Florida Statutes, Plaintiff notified Defendant City of Miami Beach of this claim prior to filing this action and said claim was not resolved.

**COUNT III**

(State Tort of Negligent Supervision and Retention against Defendant City of Miami Beach)

67. Plaintiff re-alleges paragraphs one through forty-eight and incorporates them by reference herein.

68. The Defendant City has a duty to protect individuals from the acts of false arrest and excessive force by the police officers the City employs.

69. During the course of the City's employment of Defendant Archer, the City knew or had reason to know that Defendant Archer had a history of misconduct indicating that he was unfit to serve as a police officer; that he had a history of committing civil rights violations involving excessive force and false arrest; and, that he posed a danger to the public.

70. The City breached its duty of reasonable care by:

    a) retaining Defendant Archer as a police officer;

    b) failing to discipline Defendant Archer for committing acts of misconduct including excessive force and false arrest against members of the public;

    c) failing to train and / or re-train Defendant Archer;

    d) failing to re-assign Archer to a position where he would not pose a threat to the public;

    e) failing to supervise and counsel Archer.

71 As a direct and proximate cause of the wrongful acts and omissions of the Defendant City, Plaintiff Mossberg suffered damages.

## COUNT IV

(42 U.S.C. §1983 Fourth Amendment Violation against Defendant Archer for False Arrest)

72. Plaintiff re-alleges paragraphs one through thirty-eight and incorporates them by reference herein.

73. While Defendant Archer was acting under color of law as a police officer for the City of Miami Beach, he deprived Andrew Mossberg of rights secured to him under the Fourth Amendment to the United States Constitution.

74. Defendant Archer unlawfully and without probable cause seized and arrested Mossberg.

75. Plaintiff Mossberg suffered damages as a result of being falsely arrested.

76. The conduct of Defendant Archer violated Mossberg's clearly established right to be free from an unreasonable seizure and unlawful arrest as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and for which 42 U.S.C. § 1983 provides a remedy.

## COUNT V

(42 U.S.C. §1983 First Amendment Violation for Retaliation against Defendant Archer)

77. Plaintiff re-alleges paragraphs one through thirty-eight and incorporates them by reference herein.

78. While Defendant Archer was acting under color of law as a police officer for the City of Miami Beach, he deprived Andrew Mossberg of rights secured to him under the First Amendment to the United States Constitution.

79. Defendant Archer unlawfully and without probable cause arrested Mr. Mossberg and subjected him to unnecessary force. Such actions by Defendant Archer were taken in retaliation for Plaintiff's lawful exercise of his rights under the First Amendment to report suspicious and unlawful conduct.

80. The conduct of Defendant Archer violated Mr. Mossberg's clearly established

right to free speech as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and for which 42 U.S.C. § 1983 provides a remedy.

## COUNT VI

(42 U.S.C. § 1983 Excessive Force against Archer)

81.     Plaintiff Mossberg realleges paragraphs one through thirty-eight and incorporates them by reference herein.

82.     This cause of action is brought by Plaintiff against Defendant Miami Beach Officer Archer for the excessive use of force under color of law that deprived Plaintiff Mossberg of his rights under the Fourth Amendment to the United States Constitution.

83.     Without legal cause or justification, Defendant Archer used physical force against Plaintiff Mossberg that was excessive, unnecessary, and unreasonable in violation of the Fourth Amendment to the United States Constitution.

84.     As a direct and proximate result of Archer's actions, Mossberg suffered damages.

## DEMAND FOR JURY TRIAL

Plaintiff Mossberg hereby demands a jury trial as to all issues triable by a jury.

**WHEREFORE**, Plaintiff respectfully requests this Court to award:

A. Reasonable and appropriate compensatory damages.

B. Punitive damages against Defendant Archer.

C. Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

D. Such other and further relief as this Court deems necessary and proper.

Date: December 17, 2015

Respectfully submitted,

/ s / Ray Taseff

_____

Ray Taseff
Florida Bar No. 352500

Ray Taseff, P.A.
225 Alcazar Avenue, 2nd Floor
Coral Gables, Florida 33134
Phone: 786-363-9020
Fax: 786-363-9040
RayTaseffPA@gmail.com

Gregory Samms, Esq.
Florida Bar No. 438863
225 Alcazar Avenue
Coral Gables, Florida 33134
Phone: 305-443-6163
Fax: 786-513-3191
SammsLaw@gmail.com

Attorneys for Plaintiff